UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDINAPOLIS DIVISION

| | | |
|---|---|---|
| MAURICE YOUNG, on his own behalf and on behalf of a class of those similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-2818 |
| | ) | |
| CITY OF INDIANAPOLIS, | ) | |
| | ) | |
| Defendant. | ) | |

**Class Action Complaint for Declaratory and Injunctive Relief**

**Introduction**

1.      Homeless persons in Indianapolis frequently congregate on sidewalks at bridge underpasses in downtown Indianapolis where they are protected from the elements. Although they do not block the walks, the City of Indianapolis has recently declared that storing items or lying on the public sidewalk, as well as congregating on the sidewalks, even by standing, at certain underpasses is prohibited because of an emergency.  As a result homeless persons, such as Maurice Young, have been informed that they are not even allowed to stand on the public sidewalks that go under the bridges. However, non-homeless persons are allowed to congregate under the bridges without any restriction.  The definition of "emergency" and the prohibitions that the declaration causes are vague and uncertain and the actions of the City violate due process and prohibiting homeless persons and not other persons violates equal protection. Appropriate injunctive and declaratory relief should issue for Mr. Young

[1]

and the class he seeks to represent.

**Jurisdiction, venue, cause of action**

2.      This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C.

§ 1343.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.      Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rule 57 of

the Federal Rules of Civil Procedure.

5.      Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983 to redress the

deprivation, under color of state law, of rights secured by the Constitution of the United

States.

**Parties**

6.      Maurice Young is an adult resident of Marion County, Indiana.

7.      The City of Indianapolis is a municipal corporation.

**Class action allegations**

8.      Maurice Young brings this action on his own behalf and on behalf of a class of

those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil

Procedure.

9.      The class is defined as:

> all current and future homeless persons who reside in, or visit, the downtown
> area in Indianapolis

10.     The requirements of Federal Rule of Civil Procedure 23(a) are met in this case in

that:

a.      The class is so numerous that joinder of all members is impracticable. The number of persons currently in the class is unknown, but surveys indicate that it is more than 1,000.

b.      There are questions of law or fact common to the class, namely whether defendant's practice and policy violates the United States Constitution.

c.      The claims of the named plaintiff are typical of those of the class.

d.      The named plaintiff will fairly and adequately protect the interests of the class.

11.     The requirements of Federal Rule of Civil Procedure 23(b)(2) are met here in that at all times defendant has acted and has refused to act on grounds generally applicable to the class, thereby making final declaratory and injunctive relief appropriate respecting the class as a whole.

**Factual allegations**

12.     In Indianapolis homeless persons frequently congregate on the public sidewalks under railroad overpasses on the following streets immediately north of South Street: Pennsylvania Street, Meridian Street, Illinois Street, and Capitol Avenue.

13.     These sidewalks are very wide.

14.     Some homeless persons have, in the past, placed mattresses on the wide sidewalks there and furniture and would spend nights there.  In early August of this year there were approximately 67 persons doing so.

15.     The homeless persons who were under the railroad bridges in these locations did not interfere in any way with the ability of persons to walk on the sidewalks.

16.     Other homeless persons would just visit these areas during portions of the day.

17.     At no time were the sidewalks blocked so that the general public's ability to

traverse them was affected in any way.

18.    The large majority of the homeless persons staying in these areas are on waiting lists for permanent housing, but the waiting lists are extremely long.

19.    On August 4, 2017, the attached notice from the City of Indianapolis was distributed in a number of locations including at the four underpasses noted above.

20.    The notice announced that an emergency had been declared and that all belongings and items had to be cleared from the areas prior to August 8, 2017, at 6 p.m.

21.    The notice did not specifically mention the above four underpass areas but was distributed to persons in those areas and not to persons in similar areas.

22.    On August 8 at approximately 6 p.m. trucks from the City of Indianapolis Department of Public Works came to the underpasses and removed property that homeless owners were unwilling or unable to take with them.  As noted on the attached notice, the homeless persons were given the choice of having their property stored for 60 days at the Reuben Engagement Center in downtown Indianapolis.

23.    Storage at the Reuben Engagement Center was not a viable option for most of the homeless as this is not a place where the persons can easily retrieve their items once they are stored. Therefore most of the persons did not remove their personal property and it was destroyed.

24.    Since the cleaning out of the underpass areas described above, officers of the Indianapolis Metropolitan Police Department ("IMPD") have informed homeless persons standing or sitting on the public sidewalks under the above-mentioned railroad bridges that they are not allowed to congregate there, even while standing because

there is an emergency.

25.    Maurice Young is a homeless person who frequently meets and converses with other homeless persons on the public sidewalks that are under the above-mentioned railroad bridges.

26.    On August 9 he went under one of the bridges and sat down on the sidewalk. An IMPD officer informed him that he could not sleep there.

27.    Mr. Young informed the officer that he was not sleeping, only sitting, and asked to speak to the officer's supervisor.

28.    A supervisory officer arrived and informed Mr. Young that given that an emergency had been declared that he could not sit, stop, or even stand under the four underpasses.

29.    At the time Mr. Young visited the areas there were no events taking place at any nearby stadiums or other event venues and there were not a large number of non-homeless pedestrians traversing the areas.

30.    Mr. Young has learned from other homeless persons that they were told by IMPD officers that they could not sleep, sit, stand, or even stop under the four overpasses because of the alleged emergency even though at the time that the persons were informed of this by the police there were no events taking place at any nearby stadiums or other event venues and there were not a large number of non-homeless pedestrians traversing the areas.

31.    The underpass areas have therefore been "cleaned out" of homeless persons.

32.    However, since August 8th Mr. Young has frequently observed non-homeless

persons congregating under the railroad bridges in question without any interference from IMPD or any Indianapolis employees, even though he has seen IMPD officers on bicycles pass by while non-homeless persons congregated under the bridges.

33.    Yet, if homeless people even walk into the underpass areas and are noticed by IMPD officers they will be given copies of the attached notice and told they must vacate.

34.    Maurice Young is an advocate for other homeless persons and would like the ability to meet and converse with them wherever they are, including on the sidewalks below the four railroad bridges immediately north of South Street on Pennsylvania Street, Meridian Street, Illinois Street, and Capitol Avenue, provided that pedestrian or other traffic is not obstructed.

35.     In any event, Maurice Young, who is frequently in the Indianapolis downtown area, would like to be able to stand or sit on these sidewalks, without in any way obstructing pedestrian or other traffic, to rest and obtain shelter from the elements.

36.    He is now prohibited from doing so inasmuch as the City of Indianapolis has prohibited homeless persons from even stopping in these areas because of its declaration of an emergency.

37.    The policy and actions of the City of Indianapolis are causing Maurice Young and the class of homeless persons he seeks to represent irreparable harm for which there is no adequate remedy at law.

38.    At all times defendant has acted and has refused to act under color of state law.

**Legal claims**

39.    The action of the City of Indianapolis in using the extremely vague term of "emergency" to ban homeless persons from standing, stopping, sitting, or sleeping on the sidewalks that are under the railroad bridges immediately north of South Street on Pennsylvania Street, Meridian Street, Illinois Street, and Capitol Avenue because of a declared "emergency" violates the due process clause of the United States Constitution, and the ban on standing, stopping, sitting, or sleeping is likewise vague and violates the due process clause of the United States Constitution.

40.    The action of the City of Indianapolis of enforcing the above described "emergency" ban only against persons who are homeless violates the equal protection clause of the United States Constitution.

**Request for relief**

WHEREFORE, plaintiff requests that this Court:

1.    Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

2.    Certify this case as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure with the class as defined above.

3.    Declare that the ban order created by the City of Indianapolis concerning the stopping, standing, sitting, and sleeping of homeless persons on the public sidewalks under the railroad underpasses immediately north of South Street on Pennsylvania Street, Meridian Street, Illinois Street, and Capitol Avenue violates the due process and equal protection clauses of the United States Constitution.

4.    Enter a preliminary injunction, later to be made permanent, enjoining the City of Indianapolis from enforcing the above ban order.

5.    Award plaintiff his reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

6.      Award all other proper relief.


                              s/ Kenneth J. Falk
                              Kenneth J. Falk
                              No. 6777-49


                              s/ Gavin M. Rose
                              Gavin M. Rose
                              No. 26565-53


                              s/ Jan P. Mensz
                              Jan P. Mensz
                              No. 33798-49
                              ACLU of Indiana
                              1031 E. Washington St
                              Indianapolis, IN 46202
                              317/635-4059
                              fax:  317/635-4105
                              kfalk@aclu-in.org
                              grose@aclu-in.org
                              jmensz@aclu-in.org

                              Attorneys for Plaintiff and the Putative Class

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDINAPOLIS DIVISION

| | | |
|---|---|---|
| MAURICE YOUNG, on his own behalf and on behalf of a class of those similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-2818 |
| | ) | |
| CITY OF INDIANAPOLIS, | ) | |
| | ) | |
| Defendant. | ) | |

**Class Action Complaint for Declaratory and Injunctive Relief**

**Introduction**

1.      Homeless persons in Indianapolis frequently congregate on sidewalks at bridge underpasses in downtown Indianapolis where they are protected from the elements. Although they do not block the walks, the City of Indianapolis has recently declared that storing items or lying on the public sidewalk, as well as congregating on the sidewalks, even by standing, at certain underpasses is prohibited because of an emergency.  As a result homeless persons, such as Maurice Young, have been informed that they are not even allowed to stand on the public sidewalks that go under the bridges. However, non-homeless persons are allowed to congregate under the bridges without any restriction.  The definition of "emergency" and the prohibitions that the declaration causes are vague and uncertain and the actions of the City violate due process and prohibiting homeless persons and not other persons violates equal protection. Appropriate injunctive and declaratory relief should issue for Mr. Young

[1]

and the class he seeks to represent.

**Jurisdiction, venue, cause of action**

2.      This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.      Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

5.      Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

6.      Maurice Young is an adult resident of Marion County, Indiana.

7.      The City of Indianapolis is a municipal corporation.

**Class action allegations**

8.      Maurice Young brings this action on his own behalf and on behalf of a class of those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

9.      The class is defined as:

    all current and future homeless persons who reside in, or visit, the downtown area in Indianapolis

10.     The requirements of Federal Rule of Civil Procedure 23(a) are met in this case in that:

a.    The class is so numerous that joinder of all members is impracticable. The number of persons currently in the class is unknown, but surveys indicate that it is more than 1,000.

b.    There are questions of law or fact common to the class, namely whether defendant's practice and policy violates the United States Constitution.

c.    The claims of the named plaintiff are typical of those of the class.

d.    The named plaintiff will fairly and adequately protect the interests of the class.

11.    The requirements of Federal Rule of Civil Procedure 23(b)(2) are met here in that at all times defendant has acted and has refused to act on grounds generally applicable to the class, thereby making final declaratory and injunctive relief appropriate respecting the class as a whole.

**Factual allegations**

12.    In Indianapolis homeless persons frequently congregate on the public sidewalks under railroad overpasses on the following streets immediately north of South Street: Pennsylvania Street, Meridian Street, Illinois Street, and Capitol Avenue.

13.    These sidewalks are very wide.

14.    Some homeless persons have, in the past, placed mattresses on the wide sidewalks there and furniture and would spend nights there.  In early August of this year there were approximately 67 persons doing so.

15.    The homeless persons who were under the railroad bridges in these locations did not interfere in any way with the ability of persons to walk on the sidewalks.

16.    Other homeless persons would just visit these areas during portions of the day.

17.    At no time were the sidewalks blocked so that the general public's ability to

traverse them was affected in any way.

18.    The large majority of the homeless persons staying in these areas are on waiting lists for permanent housing, but the waiting lists are extremely long.

19.    On August 4, 2017, the attached notice from the City of Indianapolis was distributed in a number of locations including at the four underpasses noted above.

20.    The notice announced that an emergency had been declared and that all belongings and items had to be cleared from the areas prior to August 8, 2017, at 6 p.m.

21.    The notice did not specifically mention the above four underpass areas but was distributed to persons in those areas and not to persons in similar areas.

22.    On August 8 at approximately 6 p.m. trucks from the City of Indianapolis Department of Public Works came to the underpasses and removed property that homeless owners were unwilling or unable to take with them.  As noted on the attached notice, the homeless persons were given the choice of having their property stored for 60 days at the Reuben Engagement Center in downtown Indianapolis.

23.    Storage at the Reuben Engagement Center was not a viable option for most of the homeless as this is not a place where the persons can easily retrieve their items once they are stored. Therefore most of the persons did not remove their personal property and it was destroyed.

24.    Since the cleaning out of the underpass areas described above, officers of the Indianapolis Metropolitan Police Department ("IMPD") have informed homeless persons standing or sitting on the public sidewalks under the above-mentioned railroad bridges that they are not allowed to congregate there, even while standing because

[4]

there is an emergency.

25.    Maurice Young is a homeless person who frequently meets and converses with other homeless persons on the public sidewalks that are under the above-mentioned railroad bridges.

26.    On August 9 he went under one of the bridges and sat down on the sidewalk. An IMPD officer informed him that he could not sleep there.

27.    Mr. Young informed the officer that he was not sleeping, only sitting, and asked to speak to the officer's supervisor.

28.    A supervisory officer arrived and informed Mr. Young that given that an emergency had been declared that he could not sit, stop, or even stand under the four underpasses.

29.    At the time Mr. Young visited the areas there were no events taking place at any nearby stadiums or other event venues and there were not a large number of non-homeless pedestrians traversing the areas.

30.    Mr. Young has learned from other homeless persons that they were told by IMPD officers that they could not sleep, sit, stand, or even stop under the four overpasses because of the alleged emergency even though at the time that the persons were informed of this by the police there were no events taking place at any nearby stadiums or other event venues and there were not a large number of non-homeless pedestrians traversing the areas.

31.    The underpass areas have therefore been "cleaned out" of homeless persons.

32.    However, since August 8th Mr. Young has frequently observed non-homeless

persons congregating under the railroad bridges in question without any interference from IMPD or any Indianapolis employees, even though he has seen IMPD officers on bicycles pass by while non-homeless persons congregated under the bridges.

33.     Yet, if homeless people even walk into the underpass areas and are noticed by IMPD officers they will be given copies of the attached notice and told they must vacate.

34.     Maurice Young is an advocate for other homeless persons and would like the ability to meet and converse with them wherever they are, including on the sidewalks below the four railroad bridges immediately north of South Street on Pennsylvania Street, Meridian Street, Illinois Street, and Capitol Avenue, provided that pedestrian or other traffic is not obstructed.

35.      In any event, Maurice Young, who is frequently in the Indianapolis downtown area, would like to be able to stand or sit on these sidewalks, without in any way obstructing pedestrian or other traffic, to rest and obtain shelter from the elements.

36.     He is now prohibited from doing so inasmuch as the City of Indianapolis has prohibited homeless persons from even stopping in these areas because of its declaration of an emergency.

37.     The policy and actions of the City of Indianapolis are causing Maurice Young and the class of homeless persons he seeks to represent irreparable harm for which there is no adequate remedy at law.

38.     At all times defendant has acted and has refused to act under color of state law.

[6]

**Legal claims**

39.    The action of the City of Indianapolis in using the extremely vague term of "emergency" to ban homeless persons from standing, stopping, sitting, or sleeping on the sidewalks that are under the railroad bridges immediately north of South Street on Pennsylvania Street, Meridian Street, Illinois Street, and Capitol Avenue because of a declared "emergency" violates the due process clause of the United States Constitution, and the ban on standing, stopping, sitting, or sleeping is likewise vague and violates the due process clause of the United States Constitution.

40.    The action of the City of Indianapolis of enforcing the above described "emergency" ban only against persons who are homeless violates the equal protection clause of the United States Constitution.

**Request for relief**

WHEREFORE, plaintiff requests that this Court:

1.    Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

2.    Certify this case as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure with the class as defined above.

3.    Declare that the ban order created by the City of Indianapolis concerning the stopping, standing, sitting, and sleeping of homeless persons on the public sidewalks under the railroad underpasses immediately north of South Street on Pennsylvania Street, Meridian Street, Illinois Street, and Capitol Avenue violates the due process and equal protection clauses of the United States Constitution.

4.    Enter a preliminary injunction, later to be made permanent, enjoining the City of Indianapolis from enforcing the above ban order.

5.    Award plaintiff his reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

[7]

6.    Award all other proper relief.

s/ Kenneth J. Falk
Kenneth J. Falk
No. 6777-49


s/ Gavin M. Rose
Gavin M. Rose
No. 26565-53


s/ Jan P. Mensz
Jan P. Mensz
No. 33798-49
ACLU of Indiana
1031 E. Washington St
Indianapolis, IN 46202
317/635-4059
fax:  317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org
jmensz@aclu-in.org

Attorneys for Plaintiff and the Putative Class

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDINAPOLIS DIVISION

| | | |
|---|---|---|
| MAURICE YOUNG, on his own behalf and on behalf of a class of those similarly situated, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-2818 |
| | ) | |
| CITY OF INDIANAPOLIS, | ) | |
| | ) | |
| Defendant. | ) | |

**Class Action Complaint for Declaratory and Injunctive Relief**

**Introduction**

1.      Homeless persons in Indianapolis frequently congregate on sidewalks at bridge underpasses in downtown Indianapolis where they are protected from the elements. Although they do not block the walks, the City of Indianapolis has recently declared that storing items or lying on the public sidewalk, as well as congregating on the sidewalks, even by standing, at certain underpasses is prohibited because of an emergency.  As a result homeless persons, such as Maurice Young, have been informed that they are not even allowed to stand on the public sidewalks that go under the bridges. However, non-homeless persons are allowed to congregate under the bridges without any restriction.  The definition of "emergency" and the prohibitions that the declaration causes are vague and uncertain and the actions of the City violate due process and prohibiting homeless persons and not other persons violates equal protection. Appropriate injunctive and declaratory relief should issue for Mr. Young

[1]

and the class he seeks to represent.

**Jurisdiction, venue, cause of action**

2.      This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391.

4.      Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202 and by Rule 57 of the Federal Rules of Civil Procedure.

5.      Plaintiff brings this cause of action pursuant to 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

**Parties**

6.      Maurice Young is an adult resident of Marion County, Indiana.

7.      The City of Indianapolis is a municipal corporation.

**Class action allegations**

8.      Maurice Young brings this action on his own behalf and on behalf of a class of those similarly situated pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure.

9.      The class is defined as:

> all current and future homeless persons who reside in, or visit, the downtown area in Indianapolis

10.     The requirements of Federal Rule of Civil Procedure 23(a) are met in this case in that:

[2]

a.    The class is so numerous that joinder of all members is impracticable. The number of persons currently in the class is unknown, but surveys indicate that it is more than 1,000.

b.    There are questions of law or fact common to the class, namely whether defendant's practice and policy violates the United States Constitution.

c.    The claims of the named plaintiff are typical of those of the class.

d.    The named plaintiff will fairly and adequately protect the interests of the class.

11.    The requirements of Federal Rule of Civil Procedure 23(b)(2) are met here in that at all times defendant has acted and has refused to act on grounds generally applicable to the class, thereby making final declaratory and injunctive relief appropriate respecting the class as a whole.

**Factual allegations**

12.    In Indianapolis homeless persons frequently congregate on the public sidewalks under railroad overpasses on the following streets immediately north of South Street: Pennsylvania Street, Meridian Street, Illinois Street, and Capitol Avenue.

13.    These sidewalks are very wide.

14.    Some homeless persons have, in the past, placed mattresses on the wide sidewalks there and furniture and would spend nights there.  In early August of this year there were approximately 67 persons doing so.

15.    The homeless persons who were under the railroad bridges in these locations did not interfere in any way with the ability of persons to walk on the sidewalks.

16.    Other homeless persons would just visit these areas during portions of the day.

17.    At no time were the sidewalks blocked so that the general public's ability to

[3]

traverse them was affected in any way.

18.     The large majority of the homeless persons staying in these areas are on waiting lists for permanent housing, but the waiting lists are extremely long.

19.     On August 4, 2017, the attached notice from the City of Indianapolis was distributed in a number of locations including at the four underpasses noted above.

20.     The notice announced that an emergency had been declared and that all belongings and items had to be cleared from the areas prior to August 8, 2017, at 6 p.m.

21.     The notice did not specifically mention the above four underpass areas but was distributed to persons in those areas and not to persons in similar areas.

22.     On August 8 at approximately 6 p.m. trucks from the City of Indianapolis Department of Public Works came to the underpasses and removed property that homeless owners were unwilling or unable to take with them.  As noted on the attached notice, the homeless persons were given the choice of having their property stored for 60 days at the Reuben Engagement Center in downtown Indianapolis.

23.     Storage at the Reuben Engagement Center was not a viable option for most of the homeless as this is not a place where the persons can easily retrieve their items once they are stored. Therefore most of the persons did not remove their personal property and it was destroyed.

24.     Since the cleaning out of the underpass areas described above, officers of the Indianapolis Metropolitan Police Department ("IMPD") have informed homeless persons standing or sitting on the public sidewalks under the above-mentioned railroad bridges that they are not allowed to congregate there, even while standing because

there is an emergency.

25.    Maurice Young is a homeless person who frequently meets and converses with other homeless persons on the public sidewalks that are under the above-mentioned railroad bridges.

26.    On August 9 he went under one of the bridges and sat down on the sidewalk. An IMPD officer informed him that he could not sleep there.

27.    Mr. Young informed the officer that he was not sleeping, only sitting, and asked to speak to the officer's supervisor.

28.    A supervisory officer arrived and informed Mr. Young that given that an emergency had been declared that he could not sit, stop, or even stand under the four underpasses.

29.    At the time Mr. Young visited the areas there were no events taking place at any nearby stadiums or other event venues and there were not a large number of non-homeless pedestrians traversing the areas.

30.    Mr. Young has learned from other homeless persons that they were told by IMPD officers that they could not sleep, sit, stand, or even stop under the four overpasses because of the alleged emergency even though at the time that the persons were informed of this by the police there were no events taking place at any nearby stadiums or other event venues and there were not a large number of non-homeless pedestrians traversing the areas.

31.    The underpass areas have therefore been "cleaned out" of homeless persons.

32.    However, since August 8th Mr. Young has frequently observed non-homeless

persons congregating under the railroad bridges in question without any interference from IMPD or any Indianapolis employees, even though he has seen IMPD officers on bicycles pass by while non-homeless persons congregated under the bridges.

33.    Yet, if homeless people even walk into the underpass areas and are noticed by IMPD officers they will be given copies of the attached notice and told they must vacate.

34.    Maurice Young is an advocate for other homeless persons and would like the ability to meet and converse with them wherever they are, including on the sidewalks below the four railroad bridges immediately north of South Street on Pennsylvania Street, Meridian Street, Illinois Street, and Capitol Avenue, provided that pedestrian or other traffic is not obstructed.

35.    In any event, Maurice Young, who is frequently in the Indianapolis downtown area, would like to be able to stand or sit on these sidewalks, without in any way obstructing pedestrian or other traffic, to rest and obtain shelter from the elements.

36.    He is now prohibited from doing so inasmuch as the City of Indianapolis has prohibited homeless persons from even stopping in these areas because of its declaration of an emergency.

37.    The policy and actions of the City of Indianapolis are causing Maurice Young and the class of homeless persons he seeks to represent irreparable harm for which there is no adequate remedy at law.

38.    At all times defendant has acted and has refused to act under color of state law.

[6]

**Legal claims**

39.     The action of the City of Indianapolis in using the extremely vague term of "emergency" to ban homeless persons from standing, stopping, sitting, or sleeping on the sidewalks that are under the railroad bridges immediately north of South Street on Pennsylvania Street, Meridian Street, Illinois Street, and Capitol Avenue because of a declared "emergency" violates the due process clause of the United States Constitution, and the ban on standing, stopping, sitting, or sleeping is likewise vague and violates the due process clause of the United States Constitution.

40.     The action of the City of Indianapolis of enforcing the above described "emergency" ban only against persons who are homeless violates the equal protection clause of the United States Constitution.

**Request for relief**

WHEREFORE, plaintiff requests that this Court:

1.     Accept jurisdiction of this case and set it for hearing at the earliest opportunity.

2.     Certify this case as a class action pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure with the class as defined above.

3.     Declare that the ban order created by the City of Indianapolis concerning the stopping, standing, sitting, and sleeping of homeless persons on the public sidewalks under the railroad underpasses immediately north of South Street on Pennsylvania Street, Meridian Street, Illinois Street, and Capitol Avenue violates the due process and equal protection clauses of the United States Constitution.

4.     Enter a preliminary injunction, later to be made permanent, enjoining the City of Indianapolis from enforcing the above ban order.

5.     Award plaintiff his reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988.

[7]

6.      Award all other proper relief.

s/ Kenneth J. Falk

Kenneth J. Falk
No. 6777-49


s/ Gavin M. Rose

Gavin M. Rose
No. 26565-53


s/ Jan P. Mensz

Jan P. Mensz
No. 33798-49
ACLU of Indiana
1031 E. Washington St
Indianapolis, IN 46202
317/635-4059
fax:  317/635-4105
kfalk@aclu-in.org
grose@aclu-in.org
jmensz@aclu-in.org

Attorneys for Plaintiff and the Putative Class